Jerry D. NUERGE and Financial Independence Partnership, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, Defendant.

Civ. No. F 89–233.

United States District Court, N.D. Indiana, Fort Wayne Division.

April 26, 1991.

James R. Fisher, Zeff Weiss, Ice Miller Donadio & Ryan, Indianapolis, Ind., David Peebles, Fort Wayne, Ind., for plaintiffs.

Howard B. Sandler, Jennifer M. Dively, Beckman Lawson Sandler Snyder & Federoff, Fort Wayne, Ind., J. Michael Tabbals, Godwin Carlton & Maxwell, Dallas, Tex., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's motion to dismiss or, in the alternative, motion to transfer venue filed on February 4, 1991. Plaintiffs responded to the motion on February 26, 1991 and defendant replied to plaintiffs' response on March 29, 1991.

### Factual Background

On May 22, 1985, Resource Savings Association (Resource)[1] made a loan to Jerry D. Nuerge in the amount of $1,600,000.00. The loan was secured by a deed of trust lien on an office building located in Fort Wayne, Indiana, known as the Financial Independence Center. Nuerge subsequently conveyed the property to Financial Independence Partnership, an entity in which Nuerge and Resource were partners. Financial Independence Partnership defaulted on the loan and, as part of a negotiated settlement, Resource agreed to reduce the required payments, afford the partnership a period of time to sell the property and, in the event of a sale within that time period, release other interests.

Financial Independence Partnership did not fulfill its obligations under the negotiated settlement and on January 19, 1989, Financial Independence Partnership conveyed the property to Resource by general warranty deed in lieu of foreclosure. In

---

1. Resource was a savings and loan association chartered under the laws of the State of Texas. Its deposits were insured by the Federal Savings and Loan Insurance Corporation (FSLIC).

addition to the conveyance, Financial Independence Partnership granted Resource an Assignment of Tenant Leases on the property. At the same time, Nuerge executed a promissory note for the deficiency on the original loan in the amount of $500,000.00. On April 6, 1989, Resource was placed into Conservatorship and continued to operate as a going concern until the Office of Thrift Supervision placed it into Receivership on November 15, 1990.

On October 12, 1989, Nuerge filed suit against Resource alleging that Resource had breached its fiduciary duties to Nuerge, as a partner of Financial Independence Partnership, and that Resource had committed fraud. Nuerge specifically alleges, inter alia, that through its right to reject purchase offers to Financial Independence Partnership, Resource effectively exercised complete control over the ability of Financial Independence Partnership to sell the property or to refinance from any source other than Resource. Resource allegedly utilized its powers to restrict the income available to Financial Independence Partnership and to create a critical cash flow problem.

On May 29, 1990, Resource filed a counterclaim against Nuerge alleging that Nuerge defaulted on the $500,000.00 promissory note, as a result of his failure to make a payment due pursuant to the payment schedule. On November 15, 1990, the Director of the Office of Thrift Supervision appointed the Resolution Trust Corporation (RTC) as Receiver for Resource Savings Association, the defendant in this action. Under the terms of the Receivership, the Federal Deposit Insurance Corporation (FDIC) is the exclusive managing agent for RTC as Receiver of Resource. Thereafter, pursuant to § 212(a), Sec. 11(d)(2) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Title 2, the RTC took possession of Resource and succeeded to all of its rights, titles, powers, and privileges. On January 31, 1991, the RTC was substituted as the defendant in this action.

*Venue*

Defendant has filed its motion to transfer venue pursuant to 12 U.S.C. § 94, 28 U.S.C. § 1406(a), and 12 U.S.C. § 1441a(b)(1). Defendant claims that venue is improper in this court and requests to have the case transferred to the Northern District of Texas, Dallas Division. The pertinent portions of the relevant statutes are as follows.

12 U.S.C. § 94, *Venue of suits*, provides:
Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located, or, in the event any State, county, or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city in which that association's principal place of business is located.

28 U.S.C. § 1406(a), *Cure or waiver of defects*, provides:
The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

12 U.S.C. § 1441a(b)(1) provides:
(b) Resolution Trust Corporation established
(1) Establishment
(A) In general
There is hereby established a Corporation to be known as the Resolution Trust Corporation which shall be an instrumentality of the United States.
(B) Status
The Corporation shall be deemed to be an agency of the United States for purposes of subchapter II of chapter 5 and chapter 7 of Title 5 when it is acting as a corporation. The Corporation, when it is acting as a conservator or receiver of an insured depository

institution, shall be deemed to be an agency of the United States to the same extent as the Federal Deposit Insurance corporation when it is acting as a conservator or receiver of an insured depository institution.

(C) FDIC as exclusive manager

Immediately upon enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Federal Deposit Insurance Corporation shall be authorized to and shall perform all responsibilities of the Corporation, and shall continue to do so unless removed pursuant to subsection (m) of this section.

Until 1982, 12 U.S.C. § 94 directed that actions or proceedings against national banks be had in any district court held within the district in which the bank was established. In 1982, § 94 was amended to apply only to actions or proceedings against banks for which the FDIC has been appointed receiver or against the FDIC as receiver of a failed national banking association. Suits against other national banks are now governed by general venue statutes. Defendant claims that this case falls within the venue provisions of § 94 and that this case must therefore be either dismissed or transferred to the Northern District of Texas.

Defendant primarily relies on *FDIC v. Hartford*, 877 F.2d 590 (7th Cir.1989), to support its argument that § 94 requires this court to transfer venue. In discussing the policy behind the venue provision as set out in § 94 the Seventh Circuit Court of Appeals stated:

Section 94 now centralizes the winding-up of banks much as the Bankruptcy Code draws into a single forum the winding-up of other firms. One court will oversee the receivership, conserving both judicial resources and the assets of the estate, which could dwindle as FDIC–Receiver retained law firms across the country to educate many district judges about the status of a single bank.

* * * * * *

Section 94, like venue rules generally, is designed to protect the defendant's con-

venience, not the plaintiff's. Perhaps we should say that § 94 *especially* was designed to protect defendants' convenience. The former version was a uniquely powerful statute, trumping other venue provisions of more general application. Nothing in the 1982 amendment, which cut the scope from all banks to failed banks, suggests that § 94 is to have less force when it applies.... FDIC–Receiver is entitled to the privilege given by § 94 despite the cost to its adversary. (Citations and parentheticals omitted.)

*Hartford*, 877 F.2d at 593, 594.

Although § 94 concerns the FDIC, rather than the RTC, defendants argue that Congress, by enacting FIRREA, has conferred upon the RTC (when it acts in its capacity as Receiver) the same rights which the FDIC (acting in its capacity as Receiver) has, including the right to change venue under § 94. Specifically, FIRREA § 212 amended Section 11 of the Federal Deposit Insurance Act, 12 U.S.C. § 1821, by adding subsection (c), which provides as follows:

(c) Appointment of [Federal Deposit Insurance] Corporation as conservator or receiver

(1) In general

Notwithstanding any other provision of Federal law, the law of any State, or the constitution of any State, the Corporation may accept appointment and act as conservator or receiver for any insured depository institution upon appointment in the manner provided in paragraph (2) or (3).

(2) Federal depository institutions

(A) Appointment

(i) Conservator

The Corporation may, at the discretion of the supervisory authority, be appointed conservator of any insured Federal depository institution or District bank and the Corporation may accept such appointment.

(ii) Receiver

The Corporation shall be appointed receiver, and shall accept such appointment, whenever a receiver is appointed

for the purpose of liquidation or winding up the affairs of an insured Federal depository institution or District bank by the appropriate Federal banking agency, notwithstanding any other provision of Federal law (other than section 1441a of this title) or the code of law for the District of Columbia.

(B) Additional powers

In addition to and not in derogation of the powers conferred and the duties imposed by this section on the Corporation as conservator or receiver, the Corporation, to the extent not inconsistent with such powers and duties shall have any other power conferred on or any duty (which is related to the exercise of such power) imposed on a conservator or receiver for any Federal depository institution under any other provision of law. Furthermore, FIRREA, at 12 U.S.C. § 1441a(b)(4), also provides as follows:

(4) Conservatorship, receivership, and assistance powers

Except as provided in paragraph (5) and in addition to any other provision of this section, the [Resolution Trust] Corporation shall have the same powers and rights to carry out its duties with respect to institutions described in paragraph (3)(A) as the Federal Deposit Insurance Corporation has under sections 11, 12, and 13 of the Federal Deposit Insurance Act [12 U.S.C. §§ 1821, 1822, and 1823] with respect to insured depository institutions (as defined in section 3 of the Federal Deposit Insurance Act) [12 U.S.C. § 1813].

Clearly, the RTC as receiver of either an "insured depository institution" or a "Federal depository institution" has available to it the privileges and rights conferred upon the FDIC in 12 U.S.C. § 94.

In opposition to RTC's motion to transfer, plaintiffs argue that basic venue rules provide that when a person causes himself to be substituted for an existing party in pending litigation, he is bound to the existing venue. See 7C Wright, Miller, & Kane,

Federal Practice and Procedure, § 1958; 67A C.J.S. § 64; 59 Am.Jur.2d, § 235. Plaintiffs further claim that RTC should have intervened as a party at the start of this litigation and that failure to object to the existing venue caused RTC's venue rights to be waived. Finally, plaintiffs claim that 12 U.S.C. § 94 does not apply to this action.

█ With respect to plaintiffs' first argument, it is clear that the purpose of § 94 is to establish a separate and distinct venue provision to apply to actions or proceedings against banks for which the FDIC has been appointed receiver and that, pursuant to FIRREA, this venue provision has been made applicable to RTC. As the Seventh Circuit stated in Hartford, supra, 877 F.2d at 594, § 94 is "a uniquely powerful statute, trumping other venue provisions of more general application." Thus, RTC is entitled to the venue provision of § 94, even though RTC is a "substituted party" in this action.

█ With respect to plaintiffs' argument that RTC waived its venue rights by not intervening earlier and objecting to the existing venue, the court fails to find any basis on which RTC, as conservator of Resource, could have objected to venue in this court. While it appears clear that the RTC as conservator could have moved to be substituted as a party in this action any time after this action was filed[2], the venue provision set out in 12 U.S.C. § 94 only applies to the RTC as receiver of a failed federally insured institution. Thus, RTC could not have objected to venue prior to its appointment as receiver of Resource and cannot be said to have waived its venue rights.

█ The final issue to be resolved is whether § 94 mandates transfer of venue in the case at bar in light of the fact that this action against Resource was properly brought in this court in the first instance. Plaintiffs suggest that this court should strictly construe § 94 and find that since

**2.** RTC was appointed Conservator of Resource on April 6, 1989. Plaintiffs filed this action against Resource on October 12, 1989. RTC was appointed Receiver of Resource on November 15, 1990 and RTC filed its Motion for Substitution on January 17, 1991.

RTC *had not been* appointed receiver when this action was initiated, the statute by its own terms does not require transfer. The statute provides that "Any action ... against a national banking association for which the Federal Deposit Insurance Corporation *has been* appointed receiver ... shall be brought ... within the district in which that association's principal place of business is located...." (Emphasis provided). Plaintiffs contend that this statute "is in derogation of normal practices" and should therefore be strictly construed.

Plaintiffs cite *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324 (D.Del.1983), in support of their position. In *Hill*, the court was required to determine whether former § 94 applied to a national bank when the bank was not a national bank at either the time the complaint was filed or when the cause of action arose. The court held that:

> The factual circumstance governing issues of venue are determined as of the time the complaint was filed, or perhaps as of the time the cause of action arose.... Consequently, the fact that Equitable later became a national bank does not make the provisions of former Section 12 U.S.C. § 94 applicable. (Citations omitted).

562 F.Supp. at 1332.

The difficulty facing the court in *Hill* was that Equitable satisfied neither the former nor the amended requirements of § 94. However, the court held that § 94 as amended controlled the issue before the court and that amended § 94 had repealed the requirements of former § 94 except in cases involving a closed bank or a Federal Deposit Insurance Corporation receivership. As the present case involves a receivership, the case fits squarely within the provisions of § 94 and § 94 controls the issue before this court. The purpose of § 94 is to consolidate the fallout of the collapse of a national banking association. *Hartford*, 877 F.2d at 593. And, as the Seventh Circuit Court of Appeals reminds us, "courts should think twice before giv-

ing a statute a reading that renders it inapplicable to the kinds of cases for which it was designed." *Id.* Therefore, complying with the policy behind § 94, the court finds that this case should be transferred[3].

#### Conclusion

For the reasons set forth above, defendant's motion to transfer this case is hereby GRANTED. Pursuant to 28 U.S.C. § 1404(a), this case is hereby TRANSFERRED to the Northern District of Texas, Dallas Division.

---

**3.** Although RTC seeks to have this case dismissed rather than transferred, the court finds that it is in the interests of justice to transfer the case, since the case has been pending for eighteen months.