**BEAM LASER SYSTEMS, INC.,**
Frank L. Beam, Plaintiffs,

v.

**COX COMMUNICATIONS, INC.,** Cablerep, Inc., Coxcom, Inc., and Seachange International, Inc., Defendants.

No. 200CV195.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 23, 2000.

---

6. *See supra* note 2.

Raymond H.J. Powell, Jr., Steven Eugene Adkins, Louis S. Mastrinani, Robert A. Westerlund, Alfred M. Haas, Adduci, Mastrinani & Schaumberg, LLP, Washington, DC, for Plaintiffs.

Walter D. Kelly, Jr., Frank A. Edgar, Jr., Willcox & Savage, Norfolk, Lars C. Golumbic, David E. Mills, Dow, Lohnes & Albertson, Washington, DC, Robert Noah Feldman, Steven M. Bauer, Eva M. Marceau, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Stephen E. Noona, Kaufman & Canoles, PC, Norfolk, VA, for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter came before the court on October 11, 2000, for a hearing on three pending motions: (1) SeaChange International, Inc. ("SeaChange"), an intervenor in this action, joined by Cox Communications, Inc. ("CCI"), CoxCom, Inc., and CableRep, Inc. (collectively, "the Cox Companies"), filed a motion to transfer venue from the Eastern District of Virginia to the District of Massachusetts; (2) Plaintiffs filed a motion for an award of costs and attorneys' fees incurred in a prior action brought by SeaChange in Massachusetts, pursuant to Federal Rule of Civil Procedure 41(d); and (3) the Cox Companies filed a motion to dismiss Frank L. Beam from the action for lack of standing. As discussed below, the court determines that Frank Beam should be dismissed as a party from the action and the motions to transfer venue and for attorneys' fees should be denied.

### I. Factual and Procedural History

On March 17, 2000, Beam Laser Systems, Inc. and Frank L. Beam (collectively, "Beam") brought this action alleging patent infringement against CCI, and seeking to enjoin CCI from infringing two patents owned by Beam Laser Systems and to recover monetary damages for previous infringements. Frank Beam is the sole shareholder of Beam Laser Systems ("Beam Laser"). The patents at issue are U.S. Patent No. 4,814,883, entitled "Multiple Input/Output Video Switch for Commercial Insertion System," and U.S. Patent No. 5,200,825, entitled "Commercial Insertion System Remotely Controlling Multiple Video Switches."

On May 16, 2000, SeaChange, which manufactures and sells advanced digital video equipment for the broadcast industry, brought a declaratory judgment action in the United States District Court for the District of Massachusetts, seeking, inter alia, a declaration that the Beam patents were invalid and/or not infringed by SeaChange or its customers, including CCI.

On May 19, 2000, SeaChange filed a motion with this court to intervene in the action brought here by Beam, and to transfer venue to the District of Massachusetts. SeaChange alleges that it is the real party in interest in this action, because it has agreed to indemnify its customers in any suit brought by Beam for infringement of the patents by its Ad Insertion Product—the allegedly infringing device, according to SeaChange, but just one component of the overall system, ac-

cording to Beam. On May 24, 2000, CCI filed a motion to dismiss for lack of personal jurisdiction, which was ultimately withdrawn.

On June 16, 2000, Beam amended its complaint to add CoxCom and CableRep—subsidiaries of CCI—as defendants. This court held a motions hearing on June 22, 2000, and granted SeaChange's motion to intervene. The court reserved ruling on the motion to transfer until the newly-added defendants could respond. The court gave all parties additional time to file simultaneous supplemental briefing on the transfer issue.

On June 23, 2000, SeaChange filed a complaint against Beam in this action, seeking declaratory judgments of non-infringement, invalidity, and unenforceability of the Beam patents, as well as tortious interference with advantageous relations based on Beam's filing of this action. Beam had filed a motion to dismiss in the Massachusetts action on June 7, 2000, based on several grounds, including lack of personal jurisdiction and improper venue. On June 27, 2000, the Massachusetts court granted SeaChange's motion for jurisdictional discovery. On July 10, 2000, SeaChange filed a notice of voluntary dismissal of its action in the District of Massachusetts.

The Cox Companies formally joined the motion to transfer venue by filing a motion to that effect on August 8, 2000. Both Beam and the defendants, jointly, have filed supplemental. memoranda on the issue of whether transfer of venue to the District of Massachusetts is appropriate.

## II. Analysis

### A. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

The decision whether to grant a motion to transfer venue is within the sound discretion of the district court. *See Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir.1956). In making the determination whether to transfer an action to an alternative forum where venue is proper, the court "must consider and balance a number of factors, including ease of access to sources of proof; the convenience of the parties and witnesses; the cost of obtaining the attendance of witnesses; the availability of compulsory process; the interest in having local controversies decided at home; ... and the interest of justice." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F.Supp.2d 689, 696 (E.D.Va.2000). The "interest of justice" factor encompasses all those factors that are unrelated to witness and party convenience. *See, e.g., GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999).

There is authority for the proposition that, as an intervenor, SeaChange may not question venue. *See Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.2d 56, 63–64 (2d Cir.1964) ("Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."); *Asbury Glen/Summit Ltd. Partnership v. Southeast Mortgage Co.*, 776 F.Supp. 1093, 1096 (W.D.N.C. 1991) (stating as a general rule that an intervenor cannot question venue); *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D.Ill.1976) (denying intervenor's motion to transfer venue because an intervenor enters an action "subject to the venue which already exists"); 7C Charles Alan Wright, Arthr R. Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 1918, at 485 (2d ed. 1986) ("By voluntarily bringing himself into the action [the intervenor] has waived his privilege not to be required to engage in litigation in that forum."); *see also id.* at 485 n. 6 (citing cases). The court finds this authority persuasive.[1] Moreover, SeaChange brought an action for declaratory judgment in Massachusetts, but after this court granted its motion to intervene in the present action, SeaChange voluntarily dismissed the Massachusetts action. SeaChange had its opportunity to litigate against Beam in its chosen forum, but forwent that opportunity in favor of joining in this action.

Although the Cox Companies have joined in the motion for transfer of venue, the strongest reasons given by the defendants in support of transfer concern SeaChange. The strongest statement that can be made with regard to the Cox Companies is that it would be no more inconvenient for them to try the case in Massachusetts than in Virginia, as they are located in Atlanta. This is clearly insufficient to warrant a transfer of venue. *See, e.g., Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1258 (E.D.Va.1988).

■ Even if the court did not favor the rule that an intervenor may not question venue, the court would exercise its discretion to deny the motion to transfer venue,

because the factors controlling that decision do not weigh in favor of transfer.[2] The movant has the burden to show that a transfer of venue pursuant to 28 U.S.C. § 1404(a) is warranted. *See Cognitronics*, 83 F.Supp.2d at 696. The court has determined that the defendants have not met their burden.

Despite defendants' contentions to the contrary, Beam has asserted significant ties to the Eastern District of Virginia, and therefore Beam's choice of forum is entitled to "substantial weight." *GTE Wireless*, 71 F.Supp.2d at 519. Under patent law, "whoever without authority makes, *uses*, offers to sell, or sells any patented invention, within the United States ... during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Beam alleges that the Cox Companies infringed its patents by using Beam's patented commercial insertion system in the Cox Companies' operations in the Eastern District of Virginia. Although the truth of these allegations ultimately must be proved, the cause of action, as pleaded by Beam, asserts that infringement occurred in this district.

SeaChange argues that the preferred forum in patent infringement cases is where "the hub of activity centered around [the infringing device's] production" lies. *GTE Wireless*, 71 F.Supp.2d at 519 (internal quotation marks omitted). This may be true for a patent infringement action alleging violation of the "makes" prong of

1. At the hearing, defense counsel attempted to distinguish this authority by arguing that the rule applies only in a case where the intervenor asserts that venue is improper, as opposed to the situation here where the intervenor moves for a change in venue for convenience. The court can see no basis for making such a distinction. Moreover, the court in *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D.Ill.1976), invoked the rule to deny the motion of an intervenor to transfer of venue.

2. Additionally, the court notes its concerns regarding whether the District Court for the District of Massachusetts has personal jurisdiction over the Cox Companies. The Supreme Court has held that 28 U.S.C.

§ 1404(a) requires that the case could have been brought in the transferee district at the time the action was originally filed, and, as a result, a party cannot later consent to personal jurisdiction in order to justify the transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 342–43, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Thus, before this court could transfer this action to Massachusetts, it would first have to determine that Massachusetts had personal jurisdiction over all the defendants when the case was filed in Virginia. Because the court has determined that transfer is not warranted for the sake of convenience, however, it is unnecessary to determine if the defendants are subject to personal jurisdiction in Massachusetts.

the statute, but, more generally, the preferred forum in a patent infringement action is "that which is the center of accused activity." *Id.* (internal quotation marks omitted). In this case, the "center of accused activity" is the Eastern District of Virginia, where Beam alleges that the Cox Companies used the infringing insertion system.

The defendants respond to Beam's "use" argument by saying that Virginia is not the center of infringement activity, because Beam has alleged infringements by the Cox Companies nationwide. The nationwide character of the alleged infringement does not diminish Beam's choice of Virginia as its forum, however: If there is no center of infringement activity in a particular case, then, as long as the plaintiff brings its action in a forum where the alleged infringement is occurring, that choice should not be undermined by allegations that infringing activities occur throughout the country.

Additionally, the defendants argue that the Cox Companies' operations, witnesses, and documents are centered in Atlanta, and that the Cox Companies' Virginia facilities are only local field operations.[3] Although this may weigh in favor of Atlanta as a forum over Norfolk, it has no relevance to the issue of whether Beam's choice of forum in the Eastern District of Virginia is entitled to deference.

The defendants must overcome the substantial weight accorded Beam's choice of forum by showing that the other factors outweigh it. To this end, the defendants argue that the convenience of the parties' witnesses and documents favors Massachusetts; the convenience of third-party witnesses favors Massachusetts; and the Massachusetts court will move the case quickly. For each argument put forward by the defendants, Beam counters with an argument of its own. The court concludes

that the defendants have not met their burden to overcome Beam's choice of forum.

### B. Motion for Costs and Attorneys' Fees

 Beam Laser has moved, pursuant to Federal Rule of Civil Procedure 41(d), for an award of costs and attorneys' fees incurred in the action filed, and later dismissed, by SeaChange in Massachusetts. Rule 41(d) provides that:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Fed.R.Civ.P. 41(d). The plain language of the rule clearly does not encompass the situation here. SeaChange did not dismiss the action in Massachusetts and then bring the action in the Eastern District of Virginia. Rather, SeaChange sought to intervene in this action—brought by Beam— and then, after this court granted its motion to intervene, SeaChange filed a counterclaim here and then dismissed its action in Massachusetts. Moreover, the purpose of the rule is to deter forum shopping and vexatious and repetitive litigation. *See Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir.2000); *Katen v. Katen*, 40 Fed. R. Serv.3d 451 (E.D.N.C.1998). Even if the rule were intended to encompass the situation here, an assessment of costs in this situation would not serve the purpose of deterring vexatious and repetitive litigation, since SeaChange could have avoided the operation of such a rule by maintaining the Massachusetts action in addition to intervening in the action here.[4]

---

3. The defendants also argue that SeaChange has little or no connection to Virginia, but, given that Beam did not sue SeaChange, this can hardly be used to argue that Beam's

choice of Virginia as a forum is entitled to no deference.

4. The bulk of the parties' pleadings on this issue is devoted to arguing about whether

### C. Motion to Dismiss Frank L. Beam as a Party

The Cox Companies have moved to dismiss Frank Beam as a party to this action on the ground that he is not the owner of the patents at issue and, consequently, does not have standing to sue for infringements of those patents. Standing to sue for patent infringement derives from the Patent Act, which provides that the patentee, or his successors in interest, "shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; see id. § 100(d) (defining "patentee" to include successors in title to the patentee to whom the patent was issued). The Federal Circuit has held[5] that where a patentee makes an assignment of all significant rights under the patent, the assignee is deemed the "effective patentee," and such assignee also has standing to sue for patent infringement. See Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1030 (Fed.Cir.1995). Additionally, a so-called "exclusive licensee" of the patent owner can bring suit for patent infringement, but has standing only jointly with the patent owner. See Abbott Lab. v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir.1995).

The law summarized above controls standing as it relates to actions at law alleging patent infringement, namely, claims for monetary damages. Additionally, there is authority for recognizing an equitable title to a patent, which confers standing in an action seeking equitable remedies, such as an injunction to prevent further infringements. See Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579–80 (Fed.Cir.1991). "Equitable title may be

defined as 'the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another.'" Id. at 1578 n. 3 (quoting Black's Law Dictionary 1486 (6th ed.1990)). An equitable title in a patent may be recognized, for example, on behalf of an employer whose inventor-employee has a duty to assign any inventions made during the course of employment to the employer. See FilmTec Corp. v. Allied–Signal Inc., 939 F.2d 1568, 1572 (Fed.Cir. 1991).[6]

Frank Beam does not claim to hold legal title to the patents at issue, nor does he assert the existence of any form of license. Rather, he argues that, as the sole shareholder of Beam Laser Systems, Inc., he has an "equitable interest" in the patents, and, on this basis, he argues that he has standing to seek injunctive relief. The Cox Companies acknowledge that if Frank Beam held equitable title to the patents, he would have standing to seek equitable relief, but they assert that he does not have equitable title to the patents at issue here.

Frank Beam's argument is predicated on his asserted ownership interest of the patents by virtue of his being the sole shareholder of Beam Laser. He relies on a case from the Southern District of Texas, in which the court found that the parent corporation of a subsidiary that held legal title to the patents in question had equitable title to the patents. See Pipe Liners, Inc. v. American Pipe & Plastics, Inc., 893 F.Supp. 704, 706 (S.D.Tex.1995).

Additionally, Frank Beam cites Dainippon Screen Manufacturing Co. v. CFMT,

---

"costs" includes attorneys' fees. Because the rule clearly does not apply in the situation here, there is no need for the court to make this determination.

5. Opinions of the Federal Circuit are binding on federal district courts in matters concerning patent law. See Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1573 (Fed. Cir.1984) (per curiam).

6. The only cases from the Federal Circuit recognizing an equitable title to a patent, of which the court is aware, involve a contractual arrangement between the party claiming to hold equitable title and the inventor, pursuant to which the inventor assigned his rights in any invention prior to the existence of an invention, and the assignee later—i.e., after the invention came into being—claimed to have equitable title to the invention.

*Inc.*, 142 F.3d 1266 (Fed.Cir.1998), for the proposition that "a shareholder who controls all of the stock of a corporate patentee may properly represent the interests of the patentee subsidiary." *Opp'n to Defs.' Mot. to Dismiss Frank L. Beam*, at 6. Although Frank Beam has accurately characterized the holding of *Dainippon*, that case did not involve standing, and therefore provides no support for his argument that he has standing to seek equitable remedies in the matter before this court.

In *Dainippon*, an alleged patent infringer brought a declaratory judgment action, naming as defendants a parent corporation and its subsidiary; the subsidiary held the legal title to the patent at issue. The defendants moved for dismissal of the suit on the ground, *inter alia*, that the court did not have personal jurisdiction over the subsidiary, yet the subsidiary was a necessary party. The district court ruled in favor of the defendants and dismissed the suit. On appeal, the Federal Circuit did not address the issue of standing. The part of the opinion upon which Frank Beam relies was the court's analysis of whether the subsidiary corporation was an indispensable party under Federal Rule of Civil Procedure 19(b). The court held that the subsidiary was not an indispensable party, reasoning that its interests were adequately represented by its parent, "a party that owns [the subsidiary] in its entirety (and therefore, in an indirect manner, [the patent] itself) and that has manifested its obvious concern over the maintenance of [the subsidiary's] patents." *Dainippon*, 142 F.3d at 1272.

The concepts of indispensable party under Rule 19(b) and standing are distinct. Although the language quoted above does suggest some form of ownership interest by a parent corporation in a subsidiary's patents, it is nevertheless not a holding that the parent has equitable title to the patents—and consequently standing to seek equitable remedies for patent infringement. The *Dainippon* court did not directly address the issue of standing, and thus, this case cannot properly be read for any holding regarding standing.

Because *Dainippon* does not help him, Frank Beam is left with the *Pipe Liners* case as his sole support for the proposition that the owner of a corporation has equitable title to the corporation's property. This court does not find *Pipe Liners* persuasive, however. Ownership of corporate stock does not create equitable title in that corporation's property. *See, e.g., Murray v. Mares (In re Murray)*, 147 B.R. 688, 690 & n. 3 (Bankr.E.D.Va.1992) (explaining that a corporation is legally separate from the stockholders who own it, and a stockholder has a right to a share of the net assets of the corporation only upon dissolution). The court finds that Frank L. Beam does not have equitable title to the patents at issue here, and thus does not have standing.

### III. Conclusion

For the reasons set forth above, the court **DENIES** the motion to transfer venue, **DENIES** Beam's motion for costs and attorneys' fees, and **GRANTS** the Cox Companies' motion to dismiss Frank L. Beam from the action.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for all parties.

IT IS SO **ORDERED.**